IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| B.B., *et al*,<br><br>                          *Plaintiffs,*<br><br>          v.<br><br>ACADIA HEALTHCARE *doing business as* SOUTHWOOD PSYCHIATRIC HOSPITAL, LLC,<br><br>                          *Defendant.* | Civil Action No. 2:25-cv-1593<br><br>Hon. William S. Stickman IV |

## MEMORANDUM OPINION

WILLIAM S. STICKMAN IV, United States District Judge

Plaintiffs B.B., Z.B., K.F., T.F., A.M., and K.S. (collectively, "Plaintiffs") are former residents of Southwood Psychiatric Hospital ("Southwood"), a residential treatment facility for children owned and operated by Defendant Acadia Healthcare ("Acadia"). (ECF No. 1-1 ¶¶ 3, 7, 43, 54, 68, 92, 104, 116). Plaintiffs allege that they suffered sexual and physical abuse at Southwood that was ignored or tolerated by its staff. (*Id.* at ¶¶ 33–35). Pending before the Court is Acadia's motion to dismiss for lack of jurisdiction and for failure to state a claim, or, alternatively, motion for a more definite statement. (ECF No. 21).[1] For the following reasons, the Court will grant in part and deny in part the motion.

---

[1] Southwood filed a motion to dismiss and an accompanying brief. (ECF Nos. 18 and 19). Acadia argues that Plaintiffs' references to plural "defendants" throughout the pleadings is evidence that Southwood has been named as a defendant in this action. (ECF No. 33, p. 2, n.1). Plaintiffs' complaint named a single defendant–Acadia "*doing business as*" Southwood Psychiatric Hospital, LLC–and they maintain that Acadia and Southwood are a single entity. (ECF No. 25, p. 1, n.1). As the master of their complaint, Plaintiffs' had the option of naming the party they choose to sue. *Burns v. Femiani*, 786 F. App'x 375, 379 (3d Cir. 2019) (citing *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 91 (2005)). Because Southwood is not named as a separate defendant, the Court will not treat it as such. Southwood is not a party to this case, and its motion will be denied.

1

## I.    FACTUAL BACKGROUND

This case arises out of events that allegedly occurred at Southwood between approximately 2006 and 2020.[2]  Plaintiffs were "housed at a facility owned and/or operated by Southwood Psychiatric Hospital." (ECF No. 1-1, ¶¶ 43, 54, 68, 92, 104, 116).  Acadia is a holding company and Southwood is one of its subsidiaries. (ECF No. 12, p. 2, n. 2).  Acadia operates a network of behavioral health facilities across the United States, including Southwood. (ECF No. 1-1, ¶¶ 3, 12).  Plaintiffs maintain that Acadia was the legal guardian or custodian of each of them during their time at Southwood. (*Id.* at ¶ 26).  They allege that they suffered sexual and physical abuse perpetrated by Southwood employees and fellow residents, and that Southwood management knew of, but ignored, that abuse. (*Id.* at ¶¶ 33–34).  Those allegations are detailed and specific as to each plaintiff.

B.B. lived at a Southwood facility for approximately one month in 2019 or 2020. (*Id.* at ¶ 43).  B.B. is described as having suffered groping of her breasts, buttocks, and genitals, forced oral sex, and rape by digital and/or penile penetration of her anus and vagina. (*Id.* at ¶¶ 43–53).  That alleged abuse was perpetrated by "Abuser Christian," a male nurse who worked the night shift on Southwood's Girls Unit Two. (*Id.* at ¶ 45).  Abuser Christian would enter B.B.'s room under the pretext of administering her medication, and his alleged abuse occurred on numerous separate occasions and during almost every shift he worked. (*Id.* at ¶ 46).

---

[2] Acadia states that Southwood became its subsidiary in 2011. (ECF No. 22, p. 15, n.5).  Therefore, it asserts that the Court cannot exercise jurisdiction over Acadia with respect to Z.B. and K.S.'s claims, as they were patients at Southwood in 2007–2008 and 2006, respectively. (ECF No. 33, p. 4, n. 3).  However, the Court is without sufficient information to adjudicate Acadia's argument about its relationship to Z.B. and K.S.'s claims, and any effort to do so would be premature.  The Court looks only to the allegations in the complaint at the motion to dismiss stage.

Z.B. was housed at Southwood Residential Treatment Facilities, now known as Southwood Psychiatric Hospital, for approximately two years between 2007 and 2008. (*Id.* at ¶ 54). Z.B. alleges abuse by Southwood employees "Abuser Ernie" and "John Doe." (*Id.* at ¶¶ 56, 60). Z.B. describes an incident where Abuser Ernie dragged him to the top of a flight of stairs, threw him down them, and then proceeded to drag him to another building where he forced him to perform oral sex. (*Id.* at ¶¶ 57–59). As to John Doe, Z.B. describes an incident where John Doe dragged him from his room to a secluded building and forced him to perform oral sex. (*Id.* at ¶¶ 61–63). This incident was reported to other Southwood staff members, which initiated a Children and Youth Services Investigation that led to the firing of John Doe. (*Id.* at ¶ 64).

K.F. was housed at a Southwood facility in or around 2012. (*Id.* at ¶ 68). K.F. alleges abuse by an unnamed Southwood employee on five separate occasions. Those occasions occurred during scheduled "one-on-one time" between K.F. and the alleged abuser. (*Id.* at ¶ 70-71). During one-on-one time, the alleged abuser would accompany K.F. as K.F. completed daily activities like showering, eating, and changing. (*Id.* at ¶ 71). The abuser would watch K.F. shower and encourage K.F. to masturbate and act in other overtly sexual ways. (*Id.* at ¶ 72). The abuser would pressure K.F. into compliance and make sexual remarks while K.F. did so. (*Id.* at ¶ 73). K.F. also alleges abuse by a fellow resident, "Abuser Jack." Abuser Jack was housed in the same room as K.F. and perpetrated abuse of K.F. on four separate occasions. (*Id.* at ¶ 75). The unit that K.F. and Abuser Jack were housed in was understaffed, as only one Southwood staff member was assigned to supervise their unit at a time. (*Id.*). During extensive unsupervised hours, Abuser Jack would corner K.F. in their shared bedroom and engage in sexually coercive activity through threats of violence. (*Id.* at ¶¶ 76–79). After each incident of abuse, K.F. would report it to the Southwood staff member in charge of the unit, as well as the psychiatrist K.F. saw as part of his treatment.

(*Id.* at ¶ 80). K.F. alleges that none of those reports were investigated. (*Id.*). K.F. alleges similar abuse by another resident that he shared a room with at Southwood. (*Id.* at ¶ 82). Again, K.F. alleges that those incidents of abuse were reported, but that no action was taken by Southwood. (*Id.* at ¶ 82).

T.F. was housed at a Southwood facility for approximately one month in 2014. (*Id.* at ¶ 92). Her abuser is named as "Abuser John Doe," an aide who worked the night shift at Southwood. (*Id.* at ¶ 94). T.F. was administered medication to help her sleep, which Abuser John Doe would exploit. On multiple occasions, Abuser John Doe would enter T.F.'s room when she was drowsy from her medication and grope T.F.'s genital area. (*Id.* at ¶¶ 96–97). Abuser John Doe would grope other areas of T.F.'s body as well, leaving bruises on her. (*Id.* at ¶ 97). Abuser John Doe would also digitally penetrate T.F.'s vagina. (*Id.* at ¶ 98). T.F. attempted to report the abuse to a Southwood staff member, but no action was ever taken. (*Id.* at ¶ 100).

A.M. was housed at a facility owned or operated by Southwood for approximately two months in 2014 or 2015. (*Id.* at ¶ 104). Her abuser is named as "Abuser John," a nurse in Southwood's south wing. (*Id.* at ¶ 106). A.M. alleges nine separate occasions of abuse wherein Abuser John would dishevel A.M.'s room under and pretextually discover an item A.M. could use to self-harm. (*Id.* at ¶¶ 107–08). That "discovery" would proceed into a physical search of A.M.'s body, where Abuser John would touch A.M.'s breasts and genital area while she wore only her underwear. (*Id.* at ¶ 109). Abuser John would then compel A.M. to get completely naked and again touched A.M.'s genital area. (*Id.* at ¶ 110). A.M. tried to report the abuse, but the Southwood staff did not believe her because of the medication she was taking. (*Id.* at ¶ 112).

K.S. was housed at a facility owned or operated by Southwood in or around 2006. (*Id.* at ¶ 116). K.S. alleges two separate occasions of abuse perpetrated by "Abuser Jane Doe." (*Id.* at ¶

118).  The first occurred when K.S. was in the kitchen and dining area of her residential unit. While reaching into the cupboard, K.S. alleges that Abuser Jane Doe approached her from behind and groped her genital area for approximately three minutes.  (*Id.* at ¶ 121).  Then, a few days later, Abuser Jane Doe was assigned to K.S. for one-on-one time, which including monitoring K.S. during her shower times.  After Abuser Jane Doe and K.S. entered the bathroom, Abuser Jane Doe digitally penetrated K.S.'s vagina for approximately five minutes.  (*Id.* at ¶ 124).  Abuser Jane Doe ordered K.S. to say nothing about the incident because no one would believe her, and that she would harm K.S. and her mother if she did.  (*Id.* at ¶ 126).

## II.    STANDARD OF REVIEW

### A.  Rule 12(b)(2)

A motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure ("Rule") 12(b)(2) "is inherently a matter which requires resolution of factual issues outside the pleadings." *Patterson by Patterson v. F.B.I.*, 893 F.2d 595, 603 (3d Cir. 1990).  The "plaintiff bears the burden of establishing the court's jurisdiction over the moving defendants." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004) (citing *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002)).  At no point may a plaintiff "rely on the bare pleadings alone" in responding to a defendant's Rule 12(b)(2) motion. *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.3d 61, 66, n. 9 (3d Cir. 1984) (citing *International Ass'n of Machinists & Aerospace Workers v. Northwest Airlines*, 673 F.2d 700 (3d Cir. 1982)).  A plaintiff may rely on affidavits, or other evidence. *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (internal quotation and citation omitted).  If the court "does not conduct [an] evidentiary hearing ... [the] plaintiff need only plead [a] prima facie case" of jurisdiction to defeat a motion to dismiss. *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 142, n.1 (3d Cir. 1992) (citations omitted).

5

Courts reviewing a motion to dismiss for lack of personal jurisdiction "must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." *Id.*

### B. Rule 12(b)(6)

A motion to dismiss filed under Rule 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A plaintiff must allege sufficient facts that, if accepted as true, state a claim for relief plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must accept all well-pleaded factual allegations as true and view them in the light most favorable to a plaintiff. *See Doe v. Princeton Univ.*, 30 F.4th 335, 340 (3d Cir. 2022); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Although a court must accept the allegations in the complaint as true, it is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citations omitted).

The "plausibility" standard required for a complaint to survive a motion to dismiss is not akin to a "probability" requirement but asks for more than sheer "possibility." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In other words, the complaint's factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations are true even if doubtful in fact. *Twombly*, 550 U.S. at 555. Facial plausibility is present when a plaintiff pleads factual content that allows the court to draw the reasonable inference that a defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Even if the complaint's well-pleaded facts lead to a plausible inference, that inference alone will not entitle a plaintiff to relief. *Id.* at 682. The complaint must support the inference with facts to plausibly justify that inferential leap. *Id.*

## C. Rule 12(e)

Rule 12(e) provides that "[a] party may move for a more definite statement of a pleading ... which is so vague or ambiguous that the party cannot reasonably prepare a response." FED. R. CIV. P. 12(e). Although motions for a more definite statement are generally disfavored, they should be granted if a pleading is "unintelligible" or "virtually impossible for the opposing party to craft a responsive pleading." *See Morris v. Kesserling*, No. 09-cv-1739, 2010 WL 4362630, at *1 (M.D. Pa. Oct. 27, 2010). The core concern of a motion under Rule 12(e) is whether the complaint gives a defendant the notice required by Rule 8. *Twombly*, 550 U.S. at 590, n.9 (Stevens, J., dissenting) ("The remedy for an allegation lacking sufficient specificity to provide adequate notice is, of course, a Rule 12(e) motion for a more definite statement."). "Factors courts consider in weighing Rule 12(e) motions include: (1) whether the purportedly deficient filing provides enough information for the opposing party to conduct its own factual investigation, (2) the degree to which the moving party is able to identify the claims against it, and (3) whether there is a good-faith explanation for why certain information was excluded from the filing." *CoorsTek Korea Ltd. v. Loomis Prods. Co.*, 586 F. Supp. 3d 331, 338 (E.D. Pa. 2022) (citation omitted). "It is not the function of 12(e) to provide greater particularization of information alleged in the complaint or which presents a proper subject for discovery." *Lincoln Labs., Inc. v. Savage Labs., Inc.*, 26 F.R.D. 141, 142–43 (D. Del. 1960). Rather, the basis for granting a Rule 12(e) motion is, "unintelligibility, not lack of detail." *See Wood & Locker, Inc. v. Doran & Assocs.*, 708 F. Supp. 684, 691 (W.D. Pa. 1989). "Whether to grant a motion under Rule 12(e) is a matter committed largely to the discretion of the district court." *Clark v. McDonald's Corp.*, 213 F.R.D. 198, 232 (D.N.J. 2003).

7

### III.    ANALYSIS

#### A. *Motion to Dismiss for Lack of Personal Jurisdiction*

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014).  Pennsylvania courts have general personal jurisdiction over out-of-state corporations that register to do business within the Commonwealth.  42 Pa. C.S. § 5301(a)(2)(i).  That registration is required by law.  15 Pa. C.S. § 411(a).

To meet its burden under Rule 12(b)(2), Plaintiffs provided an internet screenshot of Acadia's registration as an out-of-state corporation with the Pennsylvania Department of State. (ECF No. 26-2, p. 1).  That registration was initially made on August 29, 2014, and it is evidently ongoing, as Acadia's annual report is due to the Pennsylvania Department of State on June 30, 2026.  (*Id.*).  Acadia argues that the screenshot is not sufficient evidence to rebut its assertion that it neither conducts business in Pennsylvania or exercises control over Southwood.  (ECF No. 33, pp. 4–5).  But Plaintiffs need only make a prima facie showing of the Court's jurisdiction over Acadia, and the Court finds that the screenshot is sufficient evidence of Acadia's corporate registration in Pennsylvania.

The Supreme Court has held for over a century, and recently re-affirmed, that personal jurisdiction on the basis of corporate registration does not deny a defendant due process of law. *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 135, 144 (2023) (citing *Pennsylvania Fire Ins. Co. of Phila. v. Gold Issue Min. & Mill Co.*, 243 U.S. 93 (1917)).  The Court need not consider Acadia's contacts with Pennsylvania because *International Shoe* considered whether a *non*-consenting out-of-state defendant could be haled into court.  *Mallory*, 600 U.S. at 138 (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)).  Acadia registered to do business in Pennsylvania

in compliance with § 411(a), and it has consented to the jurisdiction of Pennsylvania's courts (and by extension, this Court). *Id.* at 146. Acadia's motion to dismiss for lack of jurisdiction will be denied.

### B. Motion for More Definite Statement

Acadia has also moved under Rule 12(e) for a more definite statement. (ECF No. 21, ¶ 16). It asserts that Plaintiffs have not complied with Rule 10(a)'s requirement to "name all the parties." (ECF No. 22, p. 32). According to Acadia, Plaintiffs failed to separate Acadia and Southwood in the caption and conflates them throughout the complaint. (*Id.*). In response, Plaintiffs emphasize that because "Acadia runs Southwood … [it] is the only Defendant necessary in this case." (ECF No. 26, p. 4).

Under Rule 12(e), the Court considers whether the complaint fails to put Acadia on notice of the claims against it. The Court finds that the detailed and intelligible complaint identifies the claims and provides enough information for Acadia to conduct its own factual investigation. And Plaintiffs did not exclude information that prevents the Court from ruling on the present motions. Therefore, the motion for more definite statement will be denied.

### C. Motion to Dismiss for Failure to State a Claim

#### 1. Count I–Negligence

Plaintiffs bring a claim for negligence at Count I. They allege that Acadia, by and through its staff, breached statutory and common law duties to prevent, remedy, and report the child sexual abuse described in the complaint. (ECF No. 1-1, ¶¶ 149–153). Acadia counters that the complaint fails to sufficiently allege that it was involved in day-to-day patient care at Southwood. (ECF No. 22, p. 27). Acadia also maintains that it does not operate Southwood or oversee Southwood staff.

(*Id.* at 24). Accordingly, Acadia argues that as a holding company it owed no duty to Plaintiffs. (*Id.*).

Under Pennsylvania law, a common-law negligence claim requires proof of the following elements: (1) the defendant owed the plaintiff a duty or obligation recognized by law; (2) the defendant breached that duty; (3) a causal connection existed between the defendant's conduct and the resulting injury; and (4) actual damages occurred. *Klar v. Dairy Farmers of Am., Inc.*, 300 A.3d 361, 381, n.95 (Pa. 2023) (citing *Grove v. Port. Auth. Allegheny Cnty.*, 218 A.3d 877, 889 (Pa. 2019)). The existence of a duty is a question of law, and a duty consists of a party's obligation to conform to a particular standard of care for the protection of another. *Bourgeois v. Snow Time, Inc.*, 242 A.3d 637, 409 (Pa. 2020) (citing *R.W. v. Manzek*, 888 A.2d 740, 746 (Pa. 2005)).

Plaintiffs have pled a litany of allegations to plausibly claim that Acadia placed dangerous individuals in close contact with children, failed to supervise them, and then failed to investigate when children in its facility alleged that they suffered abuse. (ECF No. 1-1, ¶ 150). Undoubtedly, an in-patient care facility has a manifest duty to protect the patients in its care from sexual and physical assaults by its agents and fellow patients. That duty is not specialized but ordinary, and it requires only the standard of care that a "reasonably prudent person" would exercise under the circumstances. *Martin v. Evans*, 771 A.2d 458, 461 (Pa. 1998). A reasonably prudent healthcare provider would investigate and address claims of child sexual abuse. Failure to do so would be a breach of the requisite standard of care, and the continuation of that abuse is causally connected to the ignorance of it. And there is no question that the alleged conduct, if proven, causes actual damages. Acadia's oversight of Southwood and its involvement in patient care are proper subjects for discovery. The motion to dismiss will be denied as to Count I.

10

### 2. *Count II–Negligent Supervision*

Plaintiffs claim in Count II that Acadia knew or should have known that it needed to supervise its staff in its interactions with patients, and that it knew or should have known that the staff named in the complaint had a propensity to abuse children. (*Id.* at ¶¶ 155–56). They further allege that Acadia failed to use due care in controlling those staff members. (*Id.* at ¶ 157). Acadia generally argues that it does not operate Southwood and, accordingly, conducts no oversight of its staff. (ECF No. 22, p. 24). It also maintains that, as a holding company, it has no employees. (*Id.* at 6).

"To recover for negligent supervision under Pennsylvania law, a plaintiff must prove that his loss resulted from: (1) a failure to exercise ordinary care to prevent an intentional harm by an employee acting outside the scope of his employment; (2) that is committed on the employer's premises; (3) when the employer knows or has reason to know of the necessity and ability to control the employee." *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 487-488 (3d Cir. 2013) (citing *Dempsey v. Walso Bureau, Inc.*, 246 A.2d 418, 420 (Pa. 1968)). Conduct is within the scope of employment if, but only if: (1) it is of the kind the employee is employed to perform; (2) it occurs substantially within the authorized time and space limits; (3) it is actuated, at least in part, by a purpose to serve the master; and (4) if force is intentionally used by the servant against another, the use of force us not unexpectable by the master. Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master. *Spitsin v. WGM Transp., Inc.*, 97 A.3d 774, 776 (Pa. Super. 2014) (citations omitted).

Plaintiffs have plausibly pled that Acadia failed to exercise ordinary care to prevent its employees from committing intentional harm outside the scope of their employment. (ECF No.

1-1, ¶¶ 155–57).    Sexual and physical assaults of children are plainly outside the scope of employment, and where a "special relationship" exists between an employer and children in its care, it is well-established under Pennsylvania law that an employer has a duty to prevent sexual assaults of those children by its employees. *Hutchison ex rel. Hutchison v. Luddy*, 742 A.2d 1052, 1058 (Pa. 1999) (holding that bishop and diocese, who were aware of priest's propensity for pedophilic behavior, had a duty to take appropriate precautions to prevent priest from molesting any more children); *see also F.D.P. v. Ferrara*, 804 A.2d 1221, 1229 (Pa. Super. 2002) (stating examples of situations where an employer breaches its duty of care to prevent child abuse, such as where a boy scout master abuses a boy scout or where a school employee abuses a student). Because the alleged assaults occurred on Acadia's premises while the alleged perpetrators were plausibly under Acadia's control, and while Acadia plausibly had reason to know that supervision of them was necessary, the motion to dismiss will be denied as to Count II.

### 3.  *Count III–Negligent Hiring, Training, and Retention*

At Count III, Plaintiffs allege that Acadia failed to conduct thorough and proper background checks of staff, investigate their criminal histories, and investigate whether those staff had any sexual interest in children. (ECF No. 1-1, ¶ 162).  They further allege that Acadia failed to train its staff to recognize signs of child abuse and properly report it.  (*Id.*).  Acadia does not directly respond to those claims, but again, it declares that it has no employees and argues that it does not operate Southwood or oversee its staff.  (ECF No. 22, pp. 6, 24).

Under Pennsylvania law, a plaintiff seeking to recover on a negligent hiring theory must show that the employer knew, or should have known, of the violent propensity of its employee and that such employment creates a situation in which a third party may be harmed. *Coath v. Jones*, 419 A.2d 1249, 1250 (Pa. Super. 1980) (citing *Dempsey*, 246 A.2d at 418).  Similarly, a negligent

retention claim requires a plaintiff to show that a defendant negligently declined to terminate an employee after learning of a dangerous tendency. *Dempsey*, 246 A.2d at 420 (citing Restatement (Second) of Torts, § 317 (1965)). And a negligent training theory does not have a separate framework from general negligence–duty, breach, causation, and damages. *Burns v. SeaWorld Parks & Entm't, Inc.*, 675 F. Supp. 3d 532, 547 (E.D. Pa. 2023). Therefore, the duty to train is limited to those issues that could themselves give rise to a cause of action for negligence–for example, failing to train employees on proper retail theft procedure does not give rise to a failure to train, because there is no separate cause of action for the negligent reporting of a crime. *Id.* (citing *Bracke v. SiteOne Landscape Supply, LLC*, No. 21-5244, 2022 WL 1128951, at *2 (E.D. Pa. Apr. 15, 2022)). Under threat of criminal penalty pursuant to Pennsylvania's Child Protective Services Law, employees of health care facilities who engage in the admission, examination, care, or treatment of individuals have a mandatory legal obligation to report reasonably suspected child abuse. Pa. C.S.A. § 6311(a)(3); *see also Heinrich v. Conemaugh Valley Mem'l Hosp.*, 648 A.2d 53, 57–58 (Pa. Super. 1994).

As to negligent hiring, Plaintiffs allege that Acadia failed to determine whether the perpetrators named in the complaint had a criminal history of, or propensity for, child sexual abuse. (ECF No. 1-1, ¶ 162). Similarly, they allege that Acadia failed to train its staff to recognize and report child abuse, and that Acadia failed to use due care in retaining the alleged perpetrators. (*Id.*). The complaint allows for the plausible inference that Acadia failed to exercise due care in hiring the alleged perpetrators, training them to comply with their mandatory reporting duties under Pennsylvania law, and retaining them upon receiving notice of their alleged abuse. Consequently, the motion to dismiss will be denied as to Count III.

13

### 4.  *Count IV–Breach of Fiduciary Duty*

At Count IV, Plaintiffs allege that Acadia bore a fiduciary relationship to them and it breached its fiduciary duty to protect them from harm by its agents. (*Id.* at ¶ 164–65).  To prevail on a breach of fiduciary duty claim, a plaintiff must prove that: (1) a fiduciary relationship existed between the plaintiff and defendant; (2) that the defendant negligently failed to act in good faith and solely for the plaintiff's benefit; and (3) that plaintiff suffered an injury caused by plaintiff's breach of fiduciary duty. *Snyder v. Crusader Servicing Corp.*, 231 A.3d 20, 31 (Pa. Super. 2020).

A fiduciary duty is the highest duty implied by law. *Yenchi v. Ameriprise Fin., Inc.*, 161 A.3d 811, 819 (Pa. 2017) (citing *Miller v. Keystone Ins. Co.*, 636 A.2d 1109, 1116 (Pa. 1994) (Cappy, J., dissenting)).  It requires a party to act with the utmost good faith in furthering and advancing the other person's interests, including a duty to disclose all relevant information. *Yenchi*, 161 A.3d at 819–20 (citations omitted).  Therefore, a fiduciary duty will be imposed only where the attendant conditions make it certain that a fiduciary duty exists. *Id.* at 820.  Sometimes, a fiduciary duty exists as a matter of law, as in relationships between principal and agent, trustee and cestui que trust, attorney and client, guardian and ward, and partners. *Id.*  In those types of relationships, a fiduciary duty exists because the unique trust and confidence inherent to them typically allows one party to gain access to the valuable resources of the other. *Id.*

Where no fiduciary duty exists at a matter of law, equity can nevertheless recognize one. Through a fact-specific inquiry, a court can find that a person's special vulnerability requires legal protections to avoid undue influence from another. *Id.* at 820–21.  However, a legally cognizable fiduciary relationship typically arises in specific contexts, like when a person compromised by age, infirmity, or lack of knowledge places financial assets or transactional authority in the complete control of another person. *Id.* at 821.

14

Here, Acadia was bound by an ordinary duty of care to protect Plaintiffs from the alleged harm. But that duty was not a fiduciary duty recognized by law, and the relationship between Acadia and the patients in its care did not give rise to a fiduciary relationship. For that reason, Count IV will be dismissed with prejudice.

### IV.    CONCLUSION

For the reasons set forth above, Acadia's motion to dismiss for failure to state a claim will be granted in part and denied in part, its motion to dismiss for lack of jurisdiction will be denied, and its motion for more definite statement will be denied. An Order of Court will follow.

BY THE COURT:

_____
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

3/31/26
_____
Dated

15